UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARNELL DUETT, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:20-cv-01354-GCS |
| | ) |
| ROBBIE JOHNSON, BRAD ("B.") | ) |
| JOHNSON, CODEY ("C.") PIPIR, | ) |
| JORDAN ("J.") VAUGHAN, MARY | ) |
| WEAVER, ADAM PUCKETT, | ) |
| DOUGLAS LEHMAN, DEBBIE | ) |
| ("DEEDEE") BROOKHART, JUSTIN | ) |
| HAMMERS, LEONTA ("L.") | ) |
| JACKSON, KRISTI NARETTO, | ) |
| | ) |
|       Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Pending before the Court is Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 48). The Court held a hearing on the Motion on October 26, 2022 and took the matter under advisement. (Doc. 62). For the reasons delineated below, the Court **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment.

On December 21, 2020, Plaintiff Darnell Duett, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brought this action against the 11 named Defendants pursuant to 42

U.S.C. §1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Illinois River Correctional Center ("Illinois River") and Lawrence Correctional Center ("Lawrence").[1] (Doc. 1). On September 27, 2021, the Court completed its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. Plaintiff was permitted to proceed against Defendants in their individual capacities on the following counts:

> **"Count 1:** Eighth Amendment claim against R. Johnson and B. Johnson for exposing Duett to a substantial risk of serious harm by falsely naming him in a disciplinary report as providing information on another inmate.
>
> **Count 2:** Eighth Amendment claim against Pipir, Vaughan, Weaver, Puckett, Lehman, Brookhart, Hammers, Jackson and Naretto for ignoring the threat to Duett's safety caused by the disciplinary report and failing to protect him from the assault [that occurred on February 6, 2020]."

(Doc. 8, p. 3). [2]

Defendants filed the present Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies along with their Memorandum of Support on May 16, 2022. (Doc. 48, 49). Plaintiff timely responded in Opposition to the Motion for Summary Judgment on June 16, 2022. (Doc. 52, 53). The record reflects that both Plaintiff

---

[1]   Plaintiff Duett was incarcerated at Illinois River Correctional Center from July 20, 2016, to July 3, 2018 (with short Writ transfers to Stateville Correctional Center). On July 3, 2018, Plaintiff was transferred to Lawrence Correctional Center where he remained until February 7, 2020. On February 7, 2020, Plaintiff was transferred to Pontiac Correctional Center where he remained until July 29, 2021, when he was transferred to Menard Correctional Center. (Doc. 49, Exh. A. p. 1-2).

[2]   In Plaintiff's complaint, Plaintiff requested that these claims proceed against all Defendants in their official capacity and "in any form the Court deems just." (Doc. 1, p. 10). Plaintiff also requested that he be provided with monetary relief in the form of punitive and nominal damages. *Id.* at p. 9-10. Because state officials may not be sued in their official capacities for monetary damages in federal court, all claims pertaining to the Defendants in their official capacities were dismissed with prejudice. *See* (Doc. 8, p. 3); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

and Defendants have supplied the Court with copies of grievances from Plaintiff's Grievance Record for consideration in relation to this matter. (Doc. 49, Exh. B); (Doc. 53, p. 4-15). However, most of these grievances are unrelated to the aforementioned allegations and will not be addressed.

Grievance No. 084533 is the only grievance that articulates the allegations contained in Plaintiff's complaint. (Doc. 49, Exh. B, p. 102-103). Plaintiff submitted this grievance at Pontiac Correctional Center ("Pontiac") on March 27, 2020. *Id.* at 102. Plaintiff had been transferred from Lawrence on February 7, 2020 – the day following the alleged inmate assault on February 6, 2020. (Doc. 49, Exh. A, p. 1). In Grievance No. 084533, Plaintiff alleges that "R. Johnson, B. Johnson and two John Does I.A. Officers went around Illinois River CC accus[ing] [him] as a snitch" and that he was "constantly under assault due to the false report that was written by R. Johnson and B. Johnson." (Doc. 49, Exh B. p. 102-103). Plaintiff further grieved that employees at Lawrence and Illinois River, including Defendants Piper, Vaughan, Weaver, Brookhart, Hammers, and Puckett knew about the substantial risk of serious harm Plaintiff was under due to these false allegations before the February 6th assault occurred and that they did nothing to protect him. *Id.* at 103.

On March 31, 2020, a counselor at Pontiac received Grievance No. 084533 and conducted the first level review of the grievance. *Id.* at 102. On April 1, 2020, the counselor released the results of their first level review and concluded that the allegations pertained to staff members outside of Pontiac. *Id.* Thus, in the response to Plaintiff, the counselor indicated that the grievance should be submitted directly to the Administrative Review

Board ("ARB") because the issue was outside the jurisdiction of the facility. *Id.*

During the evidentiary hearing on October 26, 2020, Plaintiff estimated that he received the Pontiac counselor's response to Grievance No. 084533 on April 3rd or April 4th, 2020, stating that the facility's internal mail was often delayed by a day or two. Plaintiff also testified that his commissary funds were initially unavailable at Pontiac because there was a delay in their transfer from Lawrence, which prevented him from immediately sending out the grievance to the ARB. However, Plaintiff was able to send the grievance to the ARB as instructed and it was received by the ARB on April 8, 2020. *Id.* On July 20, 2020, the ARB indicated that no further redress would be afforded to Plaintiff because the grievance was "not submitted in the timeframe outlined in Department Rule 504." (Doc. 49, Exh. B, p. 101).

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit

held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.³ *Id*. at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PRLA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012).

---

³     *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d 1022, 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claim. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PRLA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the prison's grievance procedures. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE § 504.810(a). In their grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject

of or who is otherwise involved in the complaint."[4] 20 ILL ADMIN CODE § 504.810(a). Should the prisoner not be satisfied with the counselor's response, the prisoner can then submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The grievance officer must review the grievance and provide a written response to the inmate. *See* 20 ILL ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report their findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the grievance officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance,

---

[4] This does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *See* 20 ILL ADMIN CODE § 504.810(a).

the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such cases, the inmate will be notified in writing that they should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850. *Id.*

## DISCUSSION

Defendants argue that Plaintiff has failed to exhaust his administrative remedies because he did not timely submit Grievance No. 084533 to the ARB. (Doc. 49, p. 6-7); 20 ILL. ADMIN. CODE § 504.810(a). According to § 504.810(a), "a grievance must be *filed* . . . within 60 days after the discovery of the incident." 20 ILL. ADMIN. CODE § 504.810(a). (emphasis added). Critically, Defendants conflate the term "filed" in the IDOC Grievance

Procedures with the term "received" in their Motion for Summary Judgment and Memorandum of Support. (Doc 48); (Doc 49, p. 6-7). Plaintiff actually filed Grievance No. 084533 to the ARB on the date that he placed it in the mail, not on the date the ARB received it. While Count 1 of Plaintiff's Complaint must still fail (which will be explained in further detail below), this distinction allows Count 2 of Plaintiff's Complaint to survive.

Jurisprudence within the Seventh Circuit indicates "that the prison mailbox rule, which holds that a prisoner's court filing is deemed "filed" the day it is placed in the prison mail system, applies to exhaustion." *See Smith v. Brookhart*, No. 3:20-CV-00830-MAB, 2022 WL 306837, at *7 (S.D. Ill. Feb. 2, 2022). *See also Burt v. Harrington*, No. 13-CV-794-NJR-DGW, 2017 WL 468211, at *7 (S.D. Ill. Feb. 3, 2017)(stating that "though the defendants would like us to presume that § 504.850 and the ARB's own procedures do not recognize the "mailbox rule," they offered no support (and still don't) for the proposition.") (citing *Conley v. Anglin*, No. 11-3262, 513 Fed. Appx. 598, 601 (7th Cir. Mar. 25, 2013)); *Dole*, 438 F. 3d at 811 (7th Cir. 2006)(holding that prisoner had timely filed an appeal to the ARB by placing it in the prison mail system even though it was never received by the ARB).

In *Dole*, the Seventh Circuit extrapolated reasoning from the Supreme Court in *Houston v. Lack* to justify applying the mailbox rule to the exhaustion context:

> "[T]he pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay . . . . And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to

> distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received . . . . [T]he only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice."

*Dole*, 438 F.3d. at 812 (7th Cir. 2006) (quoting *Houston v. Lack*, 487 U.S. 266, 271-272 (1988)). Ultimately, this allowed the Court in *Dole* to conclude that any potential for fraud does not justify obligating truthful prisoners to prove that they mailed their complaints when the prison authorities do not provide them with means for such verification. *See Dole*, 438 F.3d at 813. Accordingly, a prisoner has filed a grievance in accordance with IDOC Grievance Procedures when the prisoner placed the grievance in the mail.

Here, Plaintiff stated that he received a response to Grievance No. 084533 from a Pontiac Counselor on April 3rd or April 4th, 2020. The ARB received Plaintiff's grievance on April 8, 2020. Plaintiff necessarily mailed Grievance No. 084533 to the ARB at some point between these two dates. Defendants did not put forth any evidence addressing the possibility that Plaintiff placed Grievance No.084533 in the mail after April 6, 2022, which is the date of the 60-day deadline for Count 2 of Plaintiff's Complaint. Therefore, by viewing the evidence in the light most favorable to the Plaintiff, the Court finds that Plaintiff fully exhausted his administrative remedies for Count 2 as Plaintiff most likely filed his grievance directly with the ARB on or before April 6, 2020.

However, the Court must dismiss Count 1 of Plaintiff's complaint because he did not file such a timely grievance with the ARB. After reviewing Plaintiff's grievance records, it is clear that Plaintiff never filed a grievance sufficient to place the IDOC on notice concerning the false allegations made against him in his disciplinary ticket until he

submitted Grievance No. 084533 to a Pontiac counselor on March 27, 2020. (Doc. 49, Exh. B); (Doc. 53, p. 4-15). Plaintiff was previously housed at Illinois River Correctional Center from July 20, 2016, to July 3, 2018, and the disciplinary ticket accusing Plaintiff to be a "snitch" was issued at some point during that period by Defendants R. Johnson and B. Johnson. Therefore, the latest date that Plaintiff could have filed a timely grievance concerning the allegations in the disciplinary ticket would have been September 3, 2018.

Plaintiff testified at the hearing that he filed a grievance against the Johnsons at Illinois River and appealed that grievance all the way to the ARB. However, the Defendants submitted Plaintiff's Illinois River grievance records and his ARB appeal records as evidence. Such records do not show that Plaintiff ever filed a grievance against the Johnsons nor does it show that any such grievance was appealed to the ARB. Thus, Count 1 of Plaintiff's complaint must be dismissed for failure to exhaust.

## CONCLUSION

Accordingly, the Court **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 48). The Court **DENIES** the motion as to Defendants Pipir, Vaughan, Weaver, Puckett, Lehman, Brookhart, Hammers, Jackson and Naretto in Count 2, and **GRANTS** the motion as to Defendants R. Johnson and B. Johnson in Count 1. Thus, the Court **DISMISES without prejudice** Duett's claims against Defendants R. Johnson and B. Johnson in Count 1 for failure to exhaust administrative remedies. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same at the conclusion of the case.

IT IS SO ORDERED.

DATED: **December 6, 2022.**

Digitally signed by
Judge Sison 2
Date: 2022.12.06
11:58:02 -06'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**